Nos. 22-1743, 22-1744, 22-1745, 22-1746, 22-1747, 22-1748, 22-1749, 22-1750,
22-1751, 22-1752, 22-1753, 22-1754, 22-1755, 22-1756, 22-1757, 22-1758

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

RICHARD MAZUREK, et al.,

       Plaintiffs-Appellees,

v.

METALCRAFT OF MAYVILLE, INC.,

       Defendant-Appellant.

---

On Appeal from the United States District Court
for the Eastern District of Wisconsin
Case Nos. 17-cv-1439, 20-cv-0436, 20-cv-0436, 20-cv-0438, 20-cv-0439,
20-cv-0440, 20-cv-0441, 20-cv-0443, 20-cv-0447, 20-cv-0448, 20-cv0449,
20-cv-0451, 20-cv-0452, 20-cv-0454, 20-cv-0455, 20-cv-0490
The Honorable Judge Brett H. Ludwig

---

## BRIEF OF APPELLEES

---

Larry A. Johnson
Summer Murshid
Timothy Maynard
Attorneys for Plaintiffs
HAWKS QUINDEL, S.C.
222 East Erie, Suite 210
P.O. Box 442
Milwaukee, WI 53201-0442
Telephone: 414.271-8650

Michael R. Vescio
Counsel for Attorneys Larry A. Johnson,
Summer Murshid, and Timothy Maynard,
and for Hawks Quindel, S.C.
SMITHAMUNDSEN LLC
330 East Kilbourn Avenue
Suite 1100, Tower 1
Milwaukee, WI 53202-3170
Telephone: 414.847-6152

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-1743, et al.,</u>

Short Caption: <u>Richard Mazurek, et al. v. Metalcraft of Mayville, Inc.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Richard Mazurek,Brian Steger,Jeffery Anders,Brenda Reinhardt,Daniel Homan,Gordon Webster,Anne Steger,Norbet</u>

    <u>Hanni, John Farina,David Bartels,Cary Cynor,Kimberly Pucek,Kathylene Newman,Casey Lamberg,Ronald Kretschmer</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Hawks Quindel, S.C. and Smith Amundsen LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Larry A. Johnson</u>    Date: <u>May 13, 2022</u>

Attorney's Printed Name:  <u>Larry A. Johnson</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☑  No ☐

Address:  <u>5150 N. Port Washington Road, Suite 243</u>

    <u>Milwaukee, WI 53217-5470</u>

Phone Number: <u>(414) 271-8650</u>    Fax Number:  <u>(414) 207-6079</u>

E-Mail Address: <u>ljohnson@hq-law.com</u>

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1743, et al.,

Short Caption: Richard Mazurek, et al. v. Metalcraft of Mayville, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Attorneys Larry A. Johnson, Summer Murshid, and Timothy Maynard, and for Hawks Quindel, S.C.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hawks Quindel, S.C. and SmithAmundsen LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: Michael R. Vescio /s/    Date: 5-24-22

Attorney's Printed Name:  Michael R. Vescio

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 330 E Kilbourn Ave, Tower 1, Suite 1100

Milwaukee, WI 53202

Phone Number: 414-847-6152    Fax Number: 414-847-6153

E-Mail Address: mvescio@smithamundsen.com

rev. 12/19 AK

## Table of Contents

Circuit Rule 26.1 Disclosure Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     Denying the Rule 11 Motions Constituted a Proper Exercise of
        Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      The District Court Conducted a Proper Assessment of the
                Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      A Mere Grant of Summary Judgment Does Not
                        Mean Rule 11 Sanctions Should Be Granted . . . . . . . . . . . . . . . . 7

                2.      Nothing About the Summary Judgment Rulings
                        In These Cases Distinguishes Them from Any
                        Other Cases Lost at Summary Judgment . . . . . . . . . . . . . . . . . . 9

                        a.      The District Court Did Not Disregard Its
                                Own Summary Judgment Ruling . . . . . . . . . . . . . . . . . 9

                        b.      The Law of the Case Doctrine Has No
                                Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                        c.      Issue Preclusion Has No Applicability . . . . . . . . . . . . . . . 13

                3.      The District Court's Summary Judgment Ruling
                        as Much as Said That the Plaintiffs' Claims
                        Exhibited Some Arguable Merit. . . . . . . . . . . . . . . . . . . . . . . 15

                4.      The Plaintiffs Had Entirely Reasonable Arguments –

Though Unadopted – Favoring the Plaintiffs'
Factual Inferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    a.    The Claims of the Four Plaintiffs Treated
           on Summary Judgment Produced Evidence
           to Support Their Positions. . . . . . . . . . . . . . . . . . . . . . 17

        i.    Metalcraft Omits to Challenge the
             Factual Arguability of the Sias and
             Webster Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        ii.    Plaintiff William Sias Proffered
             Evidence in Support of His Position
             on Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 18

        iii.    Plaintiff Gordon Webster Proffered
             Evidence in Support of His Position
             on Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 18

        iv.    Plaintiff Richard Mazurek Proffered
             Evidence in Support of His Position
             on Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 19

        v.    Plaintiff Casey Lamberg Proffered
             Evidence in Support of His Position
             on Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 20

    b.    The Remaining Twelve Plaintiffs Took
           Heed of the District Court's Rulings Just
           As It Intended. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  5.    The District Court Had No Obligation to Cite to
        Any Evidence in Denying Rule 11 Sanctions. . . . . . . . . . . . . . . . . 21

B.    The District Court Rendered a Reasonable Decision in View
    Of the Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

  1.    The District Court Properly Treated Metalcraft's
        Failure to Maintain Adequate Timekeeping Records . . . . . . . . . . . 23

  2.    The District Court Properly Treated the Portal-to-
        Portal Act and the De Minimis Exception . . . . . . . . . . . . . . . . . . . . 24

    a.    The Plaintiffs Had Legal Support for
           Arguments Made Under the Portal-to-
           Portal Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

          b.      The Plaintiffs Had Legal Support for
                      Arguments Made Regarding the *De
                      Minimis* Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   C.      Hawks Quindel, S.C. and Its Lawyers Do Not Deserve
            Metalcraft's Reckless Libel Regarding the Extent of the
            Plaintiffs' Attorneys' Pre-Filing Inquiry . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Word Count . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# Table of Authorities

CASES:

*Alexander v. United States*, 156 Fed. Cl. 512, 526 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187,
90 L.Ed. 1515 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23, 24

*Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . 12

*Baytos v. United States*, 2022 WL 598742 (February 28, 2022) (UNPUBLISHED) . . . . . . . . . 25

*Biharz v. First Interstate Bank of Wis.*, 98 F.3d 985 (7th Cir. 1996) . . . . . . . . . . . .4, 9, 11, 13, 14

*Brown v. Family Dollar Stores of Indiana, LP*, 534 F.3d 593 (7th Cir. 2008). . . . . . . . . . . . 22, 24

*Brunt v. Service Employees Intern. Union*, 284 F.3d 715 (7th Cir. 2002). . . . . . . . . . . . . . . 26, 27

*Chagoya v. City of Chicago*, 992 F.3d 607, 619-20 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . 25

*Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807 (7th Cir. 2018) . . . . . . 12

*Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). . . . 5

*Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 8, 22

*Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183 (7th Cir. 1994) . . . . . . . . . . . . . . . . 5, 7, 21

*Eastway Const. Corp. v. City of New York*, 637 F. Supp. 558 (E.D. N.Y. 1996) . . . . . . . . . . . 17

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985) . . . . . . . . . . . . 6

*Eddings v. Health Net, Inc.*, 2012 WL 994617 (C.D. Cal. 2012) (UNPUBLISHED) . . . . . . . . 26

*Frank v. Wilson & Co.*, 172 F.2d 712 (7th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 26

*IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005). . . . . . . . . . . . . . . 25

*Indianapolis Colts v. Mayor and City of Baltimore*, 775 F.2d 177 (7th Cir. 1985) . . . . . . . . . . 6

*Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 135 S.Ct. 513, 190 L.Ed.-
2d 410 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kellar v. Summit Seating, Inc.*, 664 F.3d 169 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*La Salle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333 (7th Cir. 1993). . . . . . . 6, 25

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lord v. High Voltage Software, Inc.*, 2017 WL 1178147 (N.D. Ill. 2017) (Unpubl'd)  . 5, 7, 20

*Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989). . . . . . . . . . .6, 27

*Matter of Chicago, Rock Island and Pacific R. Co.*, 860 F.2d 267 (7th Cir. 1988). . . . . . . 4, 11

*Meredith v. Navistar Intern. Transp. Corp.*, 953 F.2d 124 (7th Cir. 1991). . . . . . . . . . . . . . 17

*Milwaukee Concrete Studios, Ltd. v Fjeld Mfg. Co., Inc.*, 8 F.3d 441 (7th Cir. 1993) . . . . . . . 6

*Munson v. Friske*, 754 F.2d 683 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Ill. Corp.*, 113 F.R.D. 637
(N.D. Ill. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Obert v. Republic Western Ins. Co.*, 398 F.3d 138 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 17

*Porchotsky v. Baker & McKenzie*, 966 F.3d 333 (7th Cir. 1992) . . . . . . . . . . . . . 4, 9, 11, 13, 14

*Schmidt v. Metalcraft of Mayville, Inc.*, 2021 WL 254431 (E.D. Wis. 2021) (UNPUBLISHED). 10

*Scott v. H & R Block Mortg. Corp.*, 2006 WL 416209 (E.D. Wis. 2006) (UNPUBLISHED). . 10

*Southworth v. Bd. of Regents of University of Wis. System*, 376 F.3d 757 (7th Cir. 2004) . . 4, 11

*Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007). . . . . . . . . . . . 26

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987). . . . . . . . . . . . . . 22

*Tharpe v. Sellers*, __ U.S. __, 138 S.Ct. 545, 199 L.Ed.2d 424 (2018). . . . . . . . . . . . . . . . . . 6

*Thomas & Betts Corp. v. Pandut Corp.*, 138 F.3d 277, (7th Cir. 1998) . . . . . . . . . . . . . . . . . 12

*Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458 (7th Cir. 2007). . . . . . . . . . . . . . . . 12

*Weinstein v. University of Illinois*, 630 F. Supp. 635 (N.D. Ill. 1986). . . . . . . . . . . . . . . . . . . 7

*Werner v. Metalcraft of Mayville, Inc.*, 2020 WL 4430742 (E.D. Wis. 2020) (UNP'D) . . . . . 10

Sᴛᴀᴛᴜᴛᴇs:

25 U.S.C. § 254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rᴇɢᴜʟᴀᴛɪᴏɴs:

29 C.F.R. § 785.47. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## Jurisdictional Statement

The amended jurisdictional statement of the appellants filed July 12, 2022 (Dkt. # 21) is complete and correct.

## Statement of the Issues

1.    Whether the district court erroneously exercised its discretion when the district court denied Metalcraft's Rule 11 motions.

2.    Whether the district court erroneously exercised its discretion when it construed its own prior ruling regarding the granting of summary judgment such that Metalcraft did not obtain the Rule 11 sanctions ruling which Metalcraft sought to obtain.

3.    Whether Metalcraft has warrant on the basis of the factual record adduced in the district court proceedings and in the applicable law for impugning the plaintiffs and their attorneys' pre-filing investigation and their motives for filing and maintaining these cases.

## Statement of the Case

The plaintiffs originally initiated these lawsuits as a collective action for overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, *et seq*., conditionally certified by joint stipulation on February 16, 2018. *Mazurek v. Metalcraft of Mayville Inc.*, 2022 WL 1028928, at *1 (E.D. Wis. 2022). On March 20, 2020, the plaintiffs moved to decertify the collection action. *Id.* The district court granted the plaintiffs' motion on April 30, 2020, and each plaintiff who had opted into the collective action thereafter proceeded with an individual lawsuit. *Id.*

The district court ordered the sixteen still-unresolved lawsuits consolidated for the limited purpose of pre-trial discovery on June 3, 2021, and granted each side – the plaintiffs, and Metalcraft – leave to file two summary judgment motions in cases chosen from among the

pending actions. *Id.* Accordingly, on July 24, 2021, Metalcraft filed a motion for summary judgment in *Mazurek v. Metalcraft of Mayville, Inc.*, 17-cv-1439, and a motion for summary judgment in *Lamberg v. Metalcraft of Mayville, Inc.*, 20-cv-0452. *Webster v. Metalcraft of Mayville Inc.*, 2021 WL 5964523, at \*2 (E.D. Wis. 2021). Likewise, on August 27, 2021, the plaintiffs in *Webster v. Metalcraft of Mayville, Inc.*, 20-cv-0447, and *Sias v. Metalcraft of Mayville, Inc.*, 20-cv-0447, filed motions for summary judgment.

The district court issued a summary judgment order on December 16, 2021 which resolved all four of the pending motions against the plaintiffs. *Webster*, 2021 WL 5964523, at \*8. At the outset of its analysis, the district court correctly acknowledged that, as a matter of law and undisputed fact, the plaintiffs in these cases faced a "reduced" evidentiary burden in proving their cases because Metalcraft's timekeeping records did not provide an accurate representation of the time employees spent performing compensable work:

> It is neither uncommon nor surprising for FLSA plaintiffs to be unable to provide with precision the amount and extent of their unpaid work. Accordingly, unless the employer's records provide a means of proof, the law gives employees a ***reduced*** burden. As the Supreme Court explained, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" the employee can carry his FLSA burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." [*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)]. Here, Defendant's timekeeping systems rounded to the scheduled shift start and end times when employees punched in during the 15-minute "Grace Period." Therefore, the timekeeping records ***do not provide*** an accurate representation of the time employees spent performing compensable work. Under such circumstances, the law does not punish "the employee by denying him any recover on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* Rather, the employee is given the opportunity to prove the amount and extent of their work as a matter of just and reasonable inference, even if their calculations lack the precision of a computerized timekeeping system. *Id.* . . .

*Webster*, 2021 WL 5964523, at *4 (emphasis added). And, later in the district court's analysis, the district court acknowledged that at least one plaintiff – Richard Mazurek – actually *had* all the requisite facts – if taken individually – needed to substantiate his claims:

> Somewhere in this jumble, there **_are_** a handful of **_facts_** that might **_support_** a FLSA action, . . . .

*Webster*, 2021 WL 5964523, at *7 (emphasis added).

Nevertheless, the district court concluded that the plaintiffs' evidence came up short even when measured against a reduced burden – when analyzed as a totality – because no jury could regard the amount and extent of the work performed by the plaintiffs as "established" through "just and reasonable inference" from the plaintiffs' evidence. *Webster*, 2021 WL 5964523, at *7. The district court summed up its conclusion about insufficiency of the evidence in the context of the reduced burden with a clever metaphor:

> [W]hile employees' calculations need not hit the bullseye, they must at least land somewhere on the proverbial dart board.

*Webster*, 2021 WL 5964523, at *5.

After resolving the four cases prioritized by the parties' motion practice, the district court directed the plaintiffs in each of the 12 remaining cases to identify any facts or legal arguments which might warrant a different outcome in those cases. *Mazurek*, 2022 WL 1028928, at *1. Instead, the plaintiffs filed motions to dismiss the remaining 12 cases. *Id.* Metalcraft agreed that the remaining cases should be dismissed, but also sought Rule 11 sanctions against all 16 remaining plaintiffs. *Id.*.

The district court denied the Rule 11 sanctions motions. *Mazurek*, 2022 WL 1028928, at *3. The district court concluded that the plaintiffs – even though they lost their cases – acted honorably in the course of pursuing them:

> Ultimately, the proof Plaintiffs were able to marshal was inadequate, but Plaintiffs' counsel did not misrepresent the law, mislead the Court, or defend at summary judgment without any facts.

*Id.* In this appeal, Metalcraft now seeks a reversal of this ruling on the Rule 11 sanctions motions.

## Summary of the Argument

This appeal depends on a basic misunderstanding about the district court's mission and duties with respect to a case in a post-summary judgment posture. Although Metalcraft denies it, Metalcraft maintains that the district court's favorable ruling on summary judgment automatically entails the granting of Metalcraft's Rule 11 sanctions motion. Quite the contrary, there is nothing amiss when a district court awards summary judgment, but nevertheless denies a motion for Rule 11 sanctions. *See, e.g., Porchotsky v. Baker & McKenzie*, 966 F.3d 333, 335 (7th Cir. 1992); *see also Biharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996).

There is no merit in Metalcraft's contention that the district court got itself all wrong when interpreting its own prior summary judgment ruling. The Seventh Circuit gives broad deference to district courts when district courts construe their own orders so long the district court's construction of those orders is reasonable. *See Matter of Chicago, Rock Island and Pacific R. Co.*, 860 F.2d 267, 727 (7th Cir. 1988) (noting that a federal district court "is in the best position to interpret its own orders"); *Southworth v. Bd. of Regents of University of Wisconsin System*, 376 F.3d 757, 766 (7th Cir. 2004). Metalcraft has not shown that the district court erroneously exercised its discretion when construing its own prior ruling. And Metalcraft has not shown the requisites for applying "law of the case" doctrine or issue preclusion.

Ample evidence existed to warrant the plaintiffs' factual and legal contentions at least until the plaintiffs received the district court's adverse ruling on the four prioritized summary

judgment motions. At that point, the plaintiffs did what the district court had hoped they would do, permitting the four exemplar rulings to resolve the entire batch of pending cases. No Rule 11 violation occurs so long as a litigant ceased to maintain the litigant's action at least "shortly after" the pre-trial proceedings in the case revealed the shortcomings of the litigant's action. *See, e.g., Lord v. High Voltage Software, Inc.*, 2017 WL 1178147, at *5 (N.D. Ill. 2017) (Unpublished); *see also, e.g., Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1188 (7th Cir. 1994). No evidence or warrant exists in Metalcraft's libelous speculations about the extent of the plaintiffs' pre-filing investigation or Metalcraft's libelous speculations about the motives of the plaintiffs or their attorneys. For all these reasons, the district court's judgment should be affirmed.

**Argument**

## I.     Standard of Review

This Court reviews a district court's ruling on Rule 11 sanctions to determine whether there has been an erroneous exercise of judicial discretion. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013). A proper exercise of the district court's discretion exists so long as the district court's view is one that a reasonable person could adopt:

> "An abuse of discretion exists where no reasonable person could take the view espoused by the district court." *Leffler v. Meer*, 60 F.3d 369, 372 (7th Cir. 1995).

*Id.* Appellate courts grant such deference to a district court's ruling on Rule 11 issues because, "[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990).

A discretionary decision on a Rule 11 sanctions motion is chiefly a judgment call reposed in the district court. *Cf. Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989) ("Whether counsel did an appropriate amount of pre-filing investigation, and whether a legal position is far *enough* off the mark to be 'frivolous,' are fact-bound. Whether the lawyer 'went too far' (or 'didn't do enough') is a judgment call.") (emphasis in *Mars Steel*). No erroneous exercise of discretion can exist so long as the district court's decision remained a reasonable decision in view of the law, and a decision that did not commit a clear error when assessing the evidence. *Milwaukee Concrete Studios, Ltd. v Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993). An abuse-of-discretion standards means that – even if the appellate court might have made a different call – the appellate court cannot substitute its own judgment in place of the judgment made by the district court. *Tharpe v. Sellers*, __ U.S. __, 138 S.Ct. 545, 553, 199 L.Ed.2d 424 (2018).

Each Rule 11 case is unique. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989). Rule 11 should not be enforced so narrowly or rigidly as to "'chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.'" *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1365 (7th Cir. 1994) (quoting the advisory committee notes). Courts strive to avoid the wisdom of hindsight when addressing sanctions motions, and courts resolve all doubts in favor of the signer of a questioned pleading. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 113 F.R.D. 637, 629 (N.D. Ill. 1987).[1] An attorney need not present the winning argument to avoid Rule 11 sanctions. *La Salle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993). To avoid chilling legitimate

---

[1] The district court in *the National Union Fire Ins. Co.* case quoted for this proposition from *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), which was cited approvingly in *Indianapolis Colts v. Mayor and City of Baltimore*, 775 F.2d 177, 181 (7th Cir. 1985).

advocacy, courts apply Rule 11 cautiously. *Weinstein v. University of Illinois*, 630 F. Supp. 635, 636 (N.D. Ill. 1986).

## II.     Denying the Rule 11 Motions Constituted a Proper Exercise of Discretion.

### A.     The District Court Conducted a Proper Assessment of the Facts.

#### 1.     A Mere Grant of Summary Judgment Does Not Mean Rule 11 Sanctions Should Be Granted.

As a threshold matter, it bears remembering that there are two distinct classes of cases in this matter – the four cases prioritized by the parties in the course of the district court's procedure adopted to resolve this matter, and the twelve remaining cases which the plaintiffs elected to dismiss in light of the result in the four prioritized cases. The district court adopted its "four-first" approach to this matter to accomplish <u>exactly</u> what ultimately happened in this case – a voluntary dismissal of the trailing twelve cases. As argued below, because the plaintiffs accepted the new information presaging the likely eventual fate of the trailing twelve cases shortly after the resolution of the four priority cases, the twelve trailing cases rightly received a more abbreviated treatment in the district court.[2] A similar "four-first" approach is warranted on appeal.

Insofar as the "four-first" priority cases are concerned, the crux of this appeal depends on a basic misunderstanding about the district court's mission and duties with respect to a case in a post-summary judgment posture. Metalcraft's foremost fact-related gripe about the federal district court's denial of its Rule 11 motions is that the district court did not "weigh[ ] the lack of

---

[2] Again, no Rule 11 violation occurs so long as a litigant ceased to maintain the litigant's action at least "shortly after" the pre-trial proceedings in the case revealed the shortcomings of the litigant's action. *See, e.g., Lord v. High Voltage Software, Inc.*, 2017 WL 1178147, at *5 (N.D. Ill. 2017) (UNPUBLISHED); *see also, e.g., Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1188 (7th Cir. 1994) (suggesting that a litigant ameliorates the risk of a Rule 11 sanction if the litigant "heed[s] the obvious warning that was written between the lines" of a judicial memorandum).

admissible evidence Plaintiffs failed to produce." Appellant's Brief, p. 16 ("However, the district court denied sanctions simply without weighing the lack of admissible evidence Plaintiffs failed to produce."). Metalcraft's entire argument on this point mistakenly presumes that by the time it addressed the Rule 11 motion practice, the matter's procedural posture remained one in which weighing the evidence *as* evidence – as opposed to assessing the relative merit of proffered inferences – was necessary to determine the worthiness of the plaintiffs' cases.

However, assessing the factual worthiness of the plaintiffs' cases post-summary judgment in the "four-first" cases did not – indeed, legally *could* not – entail the weighing of pro-plaintiff evidence. The district court's grant of summary judgment *automatically* meant there was nothing to weigh. The district court's prior decision to grant summary judgment already legally *foreclosed* the district court from holding that any material evidence existed in favor of the plaintiffs' cases for the district court to weigh: "Summary judgment is not an appropriate occasion for weighing the evidence." *Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206, 1207 (7th Cir. 1992). The district court's prior decision to grant summary judgment also already legally *foreclosed* the district court from holding that the evidentiary record permitted any reasonable inferences in favor of the plaintiffs' arguments: "'If a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then the summary judgment should be reversed.'" *Conner v. Reinhard*, 847 F.2d 384, 396 (7th Cir. 1988) (quoting *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985)). If factual worthiness of a plaintiff's case at the Rule 11 stage depended upon a lack of any favorable evidence or inference, then the mere fact that a defendant obtained summary judgment would necessarily mean that the plaintiff's position was sanctionable under Rule 11.

Quite the contrary, the mere fact that a defendant obtained summary judgment does **not** necessarily mean that the plaintiff's position was sanctionable under Rule 11. *See, e.g., Biharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996). In *Biharz*, the appellate court affirmed the district court's grant of summary judgment because the plaintiff pointed to no evidence to support her asserted claims. *Id.* at 988-989. The district court in *Biharz* concluded that the plaintiff reasonably believed the evidence would support her claims at the time that she filed her lawsuit, but concluded that the plaintiff's attorney should have realized soon after the filing that the claims lacked sufficient evidentiary support, and so imposed Rule 11 sanctions. *Id.* at 989. The Seventh Circuit reversed the district court's Rule 11 sanctions award, observing only that "we cannot say that her claims were so devoid of factual support that sanctions were appropriate." *Id.* There is nothing amiss when a district court awards summary judgment, but nevertheless denies a motion for Rule 11 sanctions. *See, e.g., Porchotsky v. Baker & McKenzie*, 966 F.3d 333, 335 (7th Cir. 1992). A favorable ruling on summary judgment does not automatically entail the granting of a Rule 11 sanctions motion.

> **2.    Nothing About the Summary Judgment Rulings in These Cases Distinguishes Them from Any Other Cases Lost at Summary Judgment.**
>
> > **a.    The District Court Did Not Disregard Its Own Summary Judgment Ruling.**

Although Metalcraft denies it,[3] Metalcraft maintains that the district court's favorable ruling on summary judgment automatically entails the granting of Metalcraft's Rule 11 sanctions

---

[3] Metalcraft wrongly maintains that the issues presented by its "ancillary" Rule 11 sanctions motion "are limited" – conclusively – "by the issues decided by the district court's summary judgment." Appellant's Brief, p. 37; see also Appellant's Brief, p. 36 (asserting that "the findings of facts and conclusions of law decided by the district court on summary judgment, are conclusive and binding . . ."). However, Metalcraft protests that it has never maintained that a grant of summary judgment per se signifies a lack of arguable merit:

motion. Metalcraft maintains that the district court "ignor[ed]"[4] and "disregard[ed]"[5] its own summary judgment ruling when denied Rule 11 sanctions because the earlier summary judgment ruling determined that no pro-plaintiff evidence existed, and there were no pro-plaintiff inferences to draw. *See*, *e.g.*, Appellant's Brief, p. 39 ("Here, the district court held that no Plaintiff had evidence to support a 'just and reasonable inference' favorable to the Plaintiffs."). In other words, Metalcraft argues that what makes *our* summary judgment ruling in this case different from other such rulings is that this particular ruling involved zero pro-plaintiff evidence and zero pro-plaintiff inferences. But that makes our case absolutely indistinguishable from literally every single other case in which summary judgment has been granted. As observed above, precisely this very same zero-evidence, zero-inference character is a logical *prerequisite* before any and every grant of summary judgment can possibly occur. *See Dowden*, 966 F.2d at

---

Appellant never argued or asserted that granting summary judgment in and of itself makes a case frivolous.

Appellant's Brief, p. 35.

As was noted below, Metalcraft's attorneys – sometimes on behalf of Metalcraft itself – with some frequency file Rule 11 sanctions motions in cases which turn out **not** to warrant such sanctions See, e.g., Scott v. H & R Block Mortg. Corp., 2006 WL 416209, at *9 (E.D. Wis. 2006) (UNPUBLISHED) ("The bottom line is that the court finds there was sufficient merit to the plaintiff's claim for the plaintiff to continue to advocate his claim to the summary judgment stage."); Schmidt v. Metalcraft of Mayville, Inc., 2021 WL 254431, at *3 (E.D. Wis. 2021) (UNPUBLISHED) ("the conduct . . . provided a reasonable basis for the plaintiff's allegation. Accordingly, neither the plaintiff nor his counsel violated Rule 11 by including the allegation in the amended complaint."); Werner v. Metalcraft of Mayville, Inc., 2020 WL 4430742, at *2 (E.D. Wis. 2020) (UNPUBLISHED) ("Finally, none of Plaintiff's conduct suggests an intent to prolong an unmeritorious lawsuit. It goes without saying that these circumstances are hardly exceptional, and do not warrant attorneys' fees *in addition to* a dismissal with prejudice. Therefore, the Court will grant Plaintiff's motion to dismiss, and dismiss the case with prejudice, and without costs and fees awarded to either party.") (emphasis in original).

[4] Appellant's Brief, p. 39 ("The district court was not at liberty to ignore its previous findings.").

[5] Appellant's Brief, p. 41 ("By disregarding its summary judgment findings and conclusions in the sanctions motion, the district court created a fiction, an inconsistent result, and a subsequent contradiction, violating the law of the case doctrine.").

1207; *Conner*, 847 F.2d 384, 396. So, Metalcraft's logic collapses into an argument that any favorable ruling on summary judgment automatically entails the granting of a Rule 11 sanctions motion. Since that argument is undeniably contrary to law, *see Biharz*, 98 F.3d at 989; *Porchotsky*, 966 F.3d at 335, it contains no basis upon which a reversal of the district court could be granted.

Moreover, no merit exists in Metalcraft's contention that the district court got its own prior decision dead wrong. *See, e.g.*, Appellant's Brief, p. 41 (characterizing the district court's sanctions ruling as "inconsistent" with the summary judgment ruling). The Seventh Circuit gives broad deference to district courts when district courts construe their own orders so long the district court's construction of those orders is reasonable. *See Matter of Chicago, Rock Island and Pacific R. Co.*, 860 F.2d 267, 727 (7th Cir. 1988) (noting that a federal district court "is in the best position to interpret its own orders"); *Southworth v. Bd. of Regents of University of Wisconsin System*, 376 F.3d 757, 766 (7th Cir. 2004). A district court has no need to resort to a dictionary to puzzle out what its own prior ruling might have meant; it *already* knows what it meant to say. Since Metalcraft never acknowledges the district court's entitlement to deference, Metalcraft never attempts on appeal to show that the district court erred in exercising its discretion to interpret its own prior order. This failure alone warrants an affirmance of the district court on appeal.

### b.     The Law of the Case Doctrine Has No Applicability.

Nothing about the law of the case doctrine required the district court to automatically award Rule 11 sanctions merely because it had already granted summary judgment to Metalcraft. First and foremost, where two different standards apply in two different procedural contexts, a court addressing the issue at bar is not bound by determinations made in prior proceedings.

*Thomas & Betts Corp. v. Pandut Corp.,* 138 F.3d 277, 292 (7th Cir. 1998). In our case, on summary judgment in December 2021, the district court needed to address whether evidence existed which might permit a pro-plaintiff fact to be found "as a matter of just and reasonable inference." *Webster*, 2021 WL 5964523, at *5. In the Rule 11 motion context in March and April 2022, in stark contrast, the district court needed to address whether – notwithstanding the propriety of summary judgment – the plaintiffs' case was so fanciful, fantastic, delusional, irrational, or wholly incredible as to be utterly lacking in support. *Denton*, 504 U.S. at 32-33, 112 S.Ct. at 1733-1734, 118 L.Ed.2d 340; *Storey*, 347 F.3d at 388. There is a wide, wide domain between those two standards in which a claim that cannot generate a just and reasonable pro-plaintiff inference remains nevertheless a serious, rational, and non-delusional claim instead of something fanciful or delusional. Since the district court correctly categorized the plaintiffs' claims here within that wide domain inhabited by serious but sub-summary judgment claims, *see Mazurek*, 2022 WL 1028928, at *2 ("they just failed to come forward with enough of this type of evidence. This failure was not sanctionable."), the ruling on summary judgment did not establish any law of the case that was binding on the Rule 11 rulings.

In addition, none of the rulings on fact proof and permissible inference in the summary judgment ruling actually decided any issue rightly presented by the Rule 11 motion practice. The law of the case doctrine is a discretionary doctrine, not an inflexible one – a presumption, not a straitajacket. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) (quoting, among others, *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227 (7th Cir. 1995)). And law of the case doctrine applies only "where a court actually decided the issue in question." *Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007). Metalcraft wrongly assumes throughout its arguments on appeal that there is an "either/or"

proposition: either a plaintiff had admissible evidence to prove conclusively a fact in issue, or else the plaintiff's claim constituted a completely baseless violation of Rule 11. This "either/or" proposition is just another version of the argument which, as noted above, collapses into an argument that any favorable ruling on summary judgment automatically entails the granting of a Rule 11 sanctions motion. Since that argument is undeniably contrary to law, *see Biharz*, 98 F.3d at 989; *Porchotsky*, 966 F.3d at 335, it is an argument that cannot support an application of law of the case to the Rule 11 motions. To say the same thing in other words, the summary judgment ruling did not actually decide an issue in question during the Rule 11 motion practice proceedings. *See Coughlin*, 481 F.3d at 462. Since "law of the case" is inapplicable, it entails no warrant for a reversal.

### c.     Issue Preclusion Has No Applicability.

Similarly, issue preclusion has no applicability here. Issue preclusion applies only where four distinct conditions are met: **(1)** the issue in question was the same issue as the one involved in the prior action; **(2)** the issue was actually litigated in the prior action, **(3)** the issue's determination was essential to a final judgment, and **(4)** the party against whom the doctrine is invoked was fully represented in the prior action. None of these conditions can be met by Metalcraft in these cases.

First and foremost, no issue in question during Rule 11 motion practice was an issue involved in the summary judgment proceedings. As noted above, on summary judgment in December 2021, the district court needed to address whether evidence existed which might permit a pro-plaintiff fact to be found "as a matter of just and reasonable inference." *Webster*, 2021 WL 5964523, at *5. In the Rule 11 motion context in March and April 2022, in stark contrast, the district court needed to address whether – notwithstanding the propriety of summary

13

judgment – the plaintiffs' case was so fanciful, fantastic, delusional, irrational, or wholly incredible as to be utterly lacking in support. *Denton*, 504 U.S. at 32-33, 112 S.Ct. at 1733-1734, 118 L.Ed.2d 340; *Storey*, 347 F.3d at 388. Since these are two very different questions – involving the application of two different standards – the Rule 11 motion practice did not involve the same issue as the one involved on summary judgment.

Second, the Rule 11 motion practice did not involve an issue actually litigated in the prior action. On summary judgment, the district court only addressed which parties should prevail on summary judgment. A party's defeat on summary judgment does not constitute an "actual litigation" of whether the party deserves a Rule 11 sanction. *See Biharz*, 98 F.3d at 989; *Porchotsky*, 966 F.3d at 335. Since the summary judgment ruling did not "actually litigate" anything at issue in the Rule 11 motion practice, the summary judgment ruling cannot preclude anything about the Rule 11 ruling.

Third, no final judgment got entered in the case prior to the Rule 11 ruling made by the district court. The third element of issue preclusion is rendered inapplicable at any time prior to the entry of a final judgment. Issue preclusion "requires the court to find that there as been a final judgment on the merits in the earlier action . . ." <u>Cardenas v. Erdmann</u>, 110 F. Supp. 2d 1084, 1085 (E.D. Wis. 2000). Since no such final judgment existed when the district court took up the Rule 11 motion practice, its decision about that motion practice could not have been governed by such final judgment.

Fourth, parties against whom Metalcraft has invoked the issue preclusion doctrine were not fully represented in the prior summary judgment ruling. In December 2021, Hawks Quindel, S.C. and its individual attorneys represented the plaintiffs. *See Mazurek*, 2022 WL 1028928 (preamble identifying attorneys and law firms). However, at that time, nobody represented

Hawks Quindel, S.C. and its individual attorneys. *Id.* By March and April 2022, during the Rule 11 motion practice, Hawks Quindel, S.C. and its individual attorneys continued to represent the plaintiffs, but, at that point in time, the undersigned attorney and SmithAmundsen LLC represented Hawks Quindel, S.C. and its individual attorneys. Given that Hawks Quindel, S.C. and its individual attorneys had no separate representation during the summary judgment proceedings, they were not fully represented in those proceedings. As a result, insofar as the fourth condition, Metalcraft cannot invoke the doctrine of issue preclusion against Hawks Quindel, S.C. and its individual attorneys.

### 3. The District Court's Summary Judgment Ruling as Much as Said That the Plaintiffs' Claims Exhibited Some Arguable Merit.

Indeed, Metalcraft reasonably should have known *before* filing its Rule 11 sanctions motions that the arguable factual merit of the plaintiffs' claims precluded the granting of sanctions. The district court essentially said as much explicitly when it conceded that among the fact proffered by the plaintiffs were a few which could arguably support an FLSA action:

> Somewhere in this jumble, there are a ***handful of facts*** that might support an FLSA action, . . .

*Webster*, 2021 WL 5964523, at *7 (emphasis added). The district court later highlighted this prior "handful of facts" concession when it explained to Metalcraft why it had to deny the Rule 11 sanctions motions. *Mazurek*, 2022 WL 1028928, at *2. In keeping with its grant of summary judgment, the district court did hasten to add to this that no reasonable person – and so, no fact-finder – could rely on only the "useful" facts while disregarding the balance of "contradictory allegations." *Webster*, 2021 WL 5964523, at *7. Nevertheless, this served advance notice that under any standard less-stringent than a summary judgment standard, the plaintiffs had an arguable factual basis for their FLSA claims.

Metalcraft tries unavailingly to work this passage over with some quick linguistic alchemy, resorting to a dictionary definition of the word "jumble" so as to associate the term with disorder and confusion. Appellant's Brief, p. 17. This dissembling is not only unworthy and clumsy, but ultimately unavailing. The fact that a case presents issues which are "fairly complicated and confusing" constitutes proof that Rule 11 "sanctions are not appropriate." *See Prochotsky v. Baker & McKenzie*, 966 F.3d 333, 335 (7th Cir. 1992). The issue thus inarguably *vindicates* the district court's ruling. Metalcraft's treatment of the "handful of facts" concession is in the end *proof* that Metalcraft's argument cannot even really pretend to cope adequately with the parts of the district court's rationale that most conspicuously spell doom for its Rule 11 sanctions arguments.

> ### 4. The Plaintiffs Had Entirely Reasonable Arguments – Though Unadopted – Favoring the Plaintiffs' Factual Inferences.

The district court quite properly concluded that – though it granted summary judgment dismissing the claims – the plaintiffs had the requisite evidence necessary for them to contest the viability of their claims through the conclusion of summary judgment proceedings. The district court properly characterized the plaintiffs' evidence when it characterized these cases as mine-run FLSA matters:

> Plaintiffs came forward with the kind of evidence that courts hearing FLSA actions have come to expect; they just failed to come forward with enough of this type of evidence. This failure was not sanctionable.

*Mazurek*, 2022 WL 1028928, at *2; *see also id.* at *3 ("This was a mine-run action in ever sense save the proliferation of related cases.").

The district court properly treated the plaintiffs' claims as serious and worthy ones even though it regarded them as ultimately unable to survive summary judgment. A party's factual

presentation cannot qualify as baseless unless the presentation has proved fanciful, fantastic, delusional, irrational, or wholly incredible. *See, e.g., Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S.Ct. 1728, 1733-1734, 118 L.Ed.2d 340 (1992). Rule 11 sanctions are not appropriate unless a plaintiff's case is "utterly lacking in support." *See, e.g., Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) ("'[S]anctions may not be imposed unless a particular allegation is utterly lacking in support.'") (quoted source omitted); *see also Meredith v. Navistar Intern. Transp. Corp.*, 953 F.2d 124, 128 (7th Cir. 1991) (suggesting that a claim whose chances are "slim" but "not utterly hopeless" should not be the basis of a fee award, in an alternate ERISA context). Indeed, even full-fledged "hopeless" argument, brought in good faith, does not violate Rule 11. *Obert v. Republic Western Ins. Co.*, 398 F.3d 138, 146 (1st Cir. 2005); *Eastway Const. Corp. v. City of New York*, 637 F. Supp. 558, 575 (E.D. N.Y. 1996) (noting the intensified importance of not discouraging litigation brought against powerful entities and noting that "[s]ometimes there are reasons to sue even when one cannot win. Bad court decisions must be challenged if they are to be overruled, but the early challenges are certainly hopeless. The first attorney to challenge Plessy v. Ferguson was certainly bringing a frivolous action, but his efforts and the efforts of others eventually led to Brown v. Board of Education."). Because the plaintiffs presented reasonable arguments in favor of their cases, the district court properly dismissed the Rule 11 sanctions motions.

a. **The Claims of the Four Plaintiffs Treated on Summary Judgment Produced Evidence to Support Their Positions.**

i. **Metalcraft Omits to Challenge the Factual Arguability of the Sias and Webster Cases.**

17

There is evidently no longer any issue on appeal regarding the arguable character of the factual record on summary judgment on behalf of Plaintiff William Sias and Plaintiff Gordon Webster. On appeal, Metalcraft challenges the arguable character of the factual record insofar as fourteen of the sixteen plaintiffs are concerned, Appellant's Brief, pp. 18-31, but conspicuously omits to treat Messrs. Sias and Webster in the same fashion as the others. In light of this omission, there can really be no further need to address the arguable character of the factual record insofar as Messrs. Sias and Webster are concerned.

### ii.     Plaintiff William Sias Proffered Evidence in Support of His Position on Summary Judgment.

Nevertheless, Metalcraft would have wrongly misrepresented the complete record if it had suggested that the plaintiffs' attorneys had nothing to argue about in favor of Plaintiff William Sias on summary judgment in this case. Mr. Sias testified that he "would say" that he punched in between fifteen minutes and eleven minutes before a scheduled shift start time (Sias Dep., 20-cv-447, Dkt. #39, Ex. 1, p. 107), and that in the last number of minutes before a scheduled shift time began, he procured tools and other equipment. (Sias Dep, 20-cv-447, Dkt. #39, Ex. 1, pp. 78-79).  Metalcraft's corporate designee agreed that the first thing Mr. Sias would do after punching in is walking to his toolbox to obtain his welding tools and equipment and take them to his work area (Lock Dep., 20-cv-447, Dkt. #39, Ex. 2, pp. 47-49). This evidence factually substantiated the plaintiffs' FLSA arguments even though summary judgment was ultimately granted.

### iii.     Plaintiff Gordon Webster Proffered Evidence in Support of His Position on Summary Judgment.

Metalcraft also would have wrongly misrepresented the complete record if it had suggested that the plaintiffs' attorneys had nothing to argue about in favor of Plaintiff Gordon Webster on summary judgment in this case. Mr. Webster testified that he was *compelled* to perform work after clocking in early for a shift even though the timekeeping system discounted time spent before the scheduled time of a shift. (Webster Dep., 20-cv-441, Dkt. #37, Ex. 2, p. 89). Mr. Webster testified that he habitually punched in between fourteen or fifteen minutes before his scheduled start time (Webster Dep., 20-cv-441, Dkt. #37, Ex. 2, p. 32), and that, in the last number of minutes before his scheduled start time, he made sure everything he used for work was right and communicated with the individual whom he was relieving from duty. (Webster Dep., 20-cv-441, Dkt. #37, Ex. 2, p. 33). This constitutes a showing of factual substantiation of the plaintiffs' FLSA arguments even though summary judgment was ultimately granted.

### iv. Plaintiff Richard Mazurek Proffered Evidence in Support of His Position on Summary Judgment.

Metalcraft does indeed wrongly misrepresent the complete record when it suggests the plaintiffs' attorneys had nothing to argue about in favor of Plaintiff Richard Mazurek on summary judgment in this case. Mr. Mazurek testified at his deposition that each day he would punch-in fourteen minutes before a scheduled shift start time (Mazurek Dep., 17-cv-1439, Dkt. # 99, Ex. 1, pp. 110-112), and that in the last number of minutes before a scheduled shift time began, he engaged in either tool-procurement or sought supervisor direction. (Mazurek Dep., 17-cv-1439, Dkt. # 99, Ex. 1, pp. 111-114). Metalcraft's corporate representative corroborated Mr. Mazurek's testimony. (Dkt. #92-2, pp. 72-73, and 74). This testimony constituted arguable substantiation of the plaintiffs' FLSA arguments even though the district court ultimately deemed this evidence insufficient to survive an analysis on summary judgment.

19

### v.   Plaintiff Casey Lamberg Proffered Evidence in Support of His Position on Summary Judgment.

Metalcraft also wrongly misrepresents the complete record when it suggests the plaintiffs' attorneys had nothing to argue about in favor of Plaintiff Casey Lamberg on summary judgment in this case. Mr. Lamberg testified that he normally punched-in ten minutes before a scheduled shift start time (Lamberg Dep., 20-cv-452, Dkt. #43, Ex. 2, p. 116), and that, in the final five minutes before a scheduled shift start time, he engaged in either tool-procurement or sought supervisor direction. (Lamberg Dep., 20-cv-452, Dkt. #43, Ex. 2, p. 112). Mr. Lamberg's supervisor corroborated his testimony. *(See, e.g.*, Declaration of Ross Case, Dkt. #44, ¶ 8). On appeal, Metalcraft glides past this testimony – leaving it unacknowledged and thus unaddressed – and yet still scandalously suggests in so many words that it was outright perjury to rely on this testimony in pre-trial discovery responses, Appellant's Brief, p. 22, and then disgracefully accuses the district court of being flagrantly *derelict* for failing to take up Metalcraft's viewpoint on this "perjury" libel. Appellant's Brief, pp. 22- 23. Metalcraft's shameful overstatements in these arguments deserve nothing more than disapproving scorn.

### b.   The Remaining Twelve Plaintiffs Took Heed of the District Court's Rulings Just as It Intended.

No genuine dispute can exist about the arguable merit of the remaining twelve cases because – once the federal district court ruled on the four cases prioritized by the parties in the case-selection process – the remaining twelve plaintiffs timely ceased maintaining their own cases. No Rule 11 violation occurs so long as a litigant ceased to maintain the litigant's action at least "shortly after" the pre-trial proceedings in the case revealed the shortcomings of the litigant's action. *See, e.g., Lord v. High Voltage Software, Inc.*, 2017 WL 1178147, at *5 (N.D.

Ill. 2017) (Unpublished); *see also, e.g., Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1188 (7th Cir. 1994) (suggesting that a litigant ameliorates the risk of a Rule 11 sanction if the litigant "heed[s] the obvious warning that was written between the lines" of a judicial memorandum). The district court obviously implemented the case-selection process that prioritized the first four cases "[i]n hopes that exemplar rulings might help resolve the entire batch" of pending cases. *Webster*, 2021 WL 5964523, at \*1. The district court's prioritization procedure fulfilled the court's hopes, in no small part because the remaining plaintiffs accepted the information supplied by the district court's ruling. Since the remaining twelve plaintiffs heeded the obvious warning and what it revealed to them about the shortcomings of their case, dropping their claims "shortly after" the summary judgment ruling's revelations, no basis for reversing the district court's Rule 11 denial exists in connection with the twelve plaintiffs whose claims never reached the point of summary judgment motion practice.

> **5.     The District Court Had No Obligation to Cite to Any Admissible Evidence in Denying Rule 11 Sanctions.**

Nothing required the district court to cite admissible evidence to support its decision denying Rule 11 sanctions. The district court adequately explained its denial of the Rule 11 sanctions motions in these 16 associated cases when it explained that the plaintiffs' cases were ultimately insufficient but not baseless:

> **I. Plaintiff's Cases Did Not Obviously Foreclose Victory on the Determinative Issue.**
>
> The decisive issue in these cases was whether Plaintiffs could prove their allegedly uncompensated worktime as a matter of "just and reasonable inference." *Mazurek v. Metalcraft of Mayville, Inc.*, No. 17-cv-1439-bhl, 2021 WL 5964541, at \*5 (E.D. Wis. Dec. 16, 2021). Under Seventh Circuit law, unreported work time can "be reconstructed from memory, inferred from the particulars of the jobs . . . or estimated in other ways – any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775

(7th Cir. 2013). When the employer is responsible for the imprecision, courts allow plaintiffs to get creative. *See Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593 (7th Cir. 2008) (permitting plaintiffs to prove hours through "triggering factors"); *Urnkis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010) (determining work hours based on the time the plaintiff dropped her child off at school and the extent of the company's business during the relevant period). In other words, FLSA litigation is often more like a game of horseshoes, where "almost" is good enough, at least where the employer has constructed a barrier to tossing a "ringer."

Accordingly, FLSA plaintiffs will sometimes legitimately seek remuneration based on a quantum of evidence that would be insufficient in other contexts. That is what Plaintiffs attempted in these cases. As the Court noted in its summary judgment order, Plaintiffs presented the Court with "a handful of facts that might support a FLSA action[.]" *Mazurek*, 2021 WL 5964541, at *7. The problem was one of degree, not kind – the methods Plaintiffs used to estimate worktime were simply too unreliable to permit a factfinder to draw a "just and reasonable inference." *Id.* But a case is not frivolous, nor is a factual presentation baseless just because it crumbles at summary judgment. *See Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 886-87 (7th Cir. 1992). Plaintiffs came forward with the kind of evidence that courts hearing FLSA actions have come to expect; they just failed to come forward with enough of this type of evidence. The failure was not sanctionable.

*Mazurek*, 2022 WL 1028928, at *3. Metalcraft nevertheless criticizes the district court for failing to cite to admissible evidence in denying the Rule 11 sanctions motions:

[I]t should be clear why the district court does not cite any admissible evidence – there is no admissible evidence.

Appellant's Brief, p. 17. As a threshold matter, obviously, as noted above, since the district court in granting summary judgment had already foreclosed any possibility that pro-plaintiff admissible evidence existed, *cf. Dowden*, 966 F.2d at 1207, it could not later cite to any. However, in addition, the district had no actual obligation to provide Metalcraft with any explanation at all, *see Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir. 1987), and so the above-quoted cogent explanation was more than sufficient. Metalcraft cannot reasonably contend that the federal district court somehow failed to adequately explain its denial.

### B.    The District Court Rendered a Reasonable Decision in View of the Applicable Law.

1.    **The District Court Properly Treated Metalcraft's Failure to Maintain Adequate Timekeeping Records.**

Nothing amiss existed in the district court's decision to relax the evidentiary standard in light of the undisputed facts relating to Metalcraft's timekeeping records. The district court's analysis of these cases began at the outset with an acknowledgement that Metalcraft itself ruined the prospect of precise proof by failing to keep accurate and adequate records of employee shift start and end times:

> It is neither uncommon nor surprising for FLSA plaintiffs to be unable to prove with precision the amount and extent of their unpaid work. Accordingly, unless the employer's records provide a means of proof, the law gives employees a reduced burden. As the Supreme Court explained, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" the employee can carry his FLSA burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Here, Defendant's timekeeping systems rounded to the scheduled shift start and end times when employees punched in during the 15-minute "Grace Period." Therefore, the timekeeping records do not provide an accurate representation of the time employees spent performing compensable work. Under such circumstances, the law does not punish "the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* Rather, the employee is given the opportunity to prove the amount and extent of their work as a matter of just and reasonable inference, even if their calculations lack the precision of a computerized timekeeping system. *Id.* But while employees' calculations need not hit the bullseye, they must at least land somewhere on the proverbial dart board.

*Webster*, 2021 WL 5964523, at *4. Everyone in the district court agreed that Metalcraft's timekeeping system as a matter of fact rounded to scheduled shift start and end times when its employees punched in earlier or later than the scheduled start time.[6] Under settled law, once the plaintiffs established that Metalcraft failed to keep the proper and accurate records required by

---

[6] *See*, *e.g.*, 20-cv-452, Dkt. # 35, p. 5 ("Unless the employee is authorized to work overtime, the [timekeeping] system automatically adjusts the employee clock in and out time to scheduled worktimes, which adjustments should only be non-worktime.") (citation omitted).

the FLSA, Metalcraft had "made the best evidence" of the plaintiffs' damages "unavailable." Brown v. Family Dollar Stores of Indiana, LP, 534 F.3d 593, 595 (7th Cir. 2008).

The district court properly regarded this relaxed evidentiary standard as a forgiving standard when it came time to evaluate the plaintiffs' Rule 11 compliance. *Mazurek*, 2022 WL 1028928, at *3. Metalcraft wrongly maintains that the district court in its summary judgment decision found the timekeeping records to be immaterial. Appellant's Brief, p. 49. However, the district court only characterized the punch records as immaterial when it came to refreshing recollections. *Webster*, 2021 WL 5964523, at *8. The district court properly regarded the timekeeping record deficiency as crucial when determining whether to indulge some measure of imprecision in an employee's *own* evidence when the punch records cannot be utilized. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). This aspect of the district court's decision was a reasonable one in view of the law, and so an analysis of it should lead to an affirmance of the district court.

## 2. The District Court Properly Treated the Portal-to-Portal Act and the *De Minimis* Exception.

Nothing amiss existed in the district court's decision to treat as serious the plaintiffs' arguments about pre-shift activities and their treatment under the Portal-to-Portal Act, 25 U.S.C. § 254(a) or the de minimis exception. In a footnote in its summary judgment ruling, the federal district court noted that, even if it had not been dissatisfied with the plaintiffs' factual evidence, it would have come down on the Metalcraft side of the parties' extensive debate on brief about compensability of activities under the Portal-to-Portal Act. *Webster*, 2021 WL 5964523, at *7 n. 4. As Metalcraft acknowledges, these were "fully and aggressively litigated" issues by both parties in the district court. Appellant's Brief, p. 33. Although the plaintiffs did not prevail on

these issues in the "four first" summary judgment cases, there was no shortage of legal authorities to marshal in support of the plaintiffs' arguments.

> ### a. The Plaintiffs Had Legal Support for Arguments Made Under the Portal-to-Portal Act.

The legal consequences of the Portal-to-Portal Act in this case constituted a matter of fair legal debate. As the plaintiffs noted below, the Portal-to-Portal Act has "no effect on the computation of hours that are worked 'within' the workday." IBP, Inc. v. Alvarez, 546 U.S. 21, 28, 126 S.Ct. 514, 520, 163 L.Ed.2d 288 (2005). The parties' debate below came down to what constituted an activity integral and indispensable to the plaintiffs' work. For its part, Metalcraft relied below chiefly on the then-very recent ruling[7] in *Chagoya v. City of Chicago*, 992 F.3d 607, 619-20 (7th Cir. 2021)[8] for the proposition that merely necessary activities do not qualify as integral and indispensable activities. For their part, the plaintiffs maintained that their tool-procurement and supervisor-direction activities after punching in were integral and indispensable to the plaintiffs' work because those activities were an intrinsic element of the plaintiffs' work without which they could not perform work at all. *See, e.g., Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 37, 135 S.Ct. 513, 519, 190 L.Ed.2d 410 (2014); *see also, e.g., Baytos v. United States*, 2022 WL 598742, at *7 (February 28, 2022) (distinguishing *Integrity* and thus confirming that its import remains a matter of still-active debate). For Rule 11 purposes, it suffices if an unsuccessful litigant attempted to distinguish the case law marshaled against the

---

[7] Obviously, *Chagoya* did not exist until just before the briefing on the plaintiffs' "four-first" summary judgment motions. A signer's pleadings are judged by what was "reasonable to believe at the time the pleading or other paper was signed." *La Salle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993).

[8] The relative merits of the result and analysis in the *Chagoya* case remain a matter of still-active debate in federal FLSA jurisprudence. *See, e.g., Alexander v. United States*, 156 Fed. Cl. 512, 526 (2021).

litigant. *See, e.g.*, *Brunt v. Service Employees Intern. Union*, 284 F.3d 715, 721 (7th Cir. 2002). The plaintiffs in these cases did far, far more than that. Nothing exists to render these issues so well-settled as to disqualify them from being debated in the federal courts.

**b.**    **The Plaintiffs Had Legal Support for Arguments Made Regarding the *De Minimis* Exception.**

The legal consequences of the *de minimis* exception in this case constituted a matter of fair legal debate. For its part, Metalcraft notes that *de minimis* activities are not compensable. *Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir. 1949). For their part, the plaintiffs maintained, first, as a threshold matter, that the *de minimis* doctrine did not apply because Metalcraft's timekeeping records did not provide an accurate representation of the time employees spent performing compensable work. *See Eddings v. Health Net, Inc.*, 2012 WL 994617, at *5 (C.D. Cal. 2012) ("However, Defendant does not cite any case in which a court has applied the *de minimis* exception when time is rounded away due to a rounding policy, particularly when employees record their exact time and it is that *precise* time that is then made *imprecise* through rounding."). After that, the plaintiffs argued Metalcraft failed in its burden to show the increment of time to be labeled *de minimis*, *see Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); Metalcraft failed to show why it would be administratively difficult to compensate such increments of time, *see Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 869 (W.D. Wis. 2007); Metalcraft failed to show justification for discounting fixed and regular working time, see 29 C.F.R. § 785.47; and Metalcraft failed to show how the aggregate claim somehow remained *de minimis*. *See, e.g., Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984) ("In addition, we will consider the size of the aggregate claim.")

(citations omitted). Nothing exists to render these issues so well-settled as to disqualify them from being debated in the federal courts.

### C.    Hawks Quindel, S.C. and Its Lawyers Do Not Deserve Metalcraft's Reckless Libel Regarding the Extent of The Plaintiffs' Attorneys' Pre-Filing Inquiry.

No basis in fact exists for Metalcraft's vilification of the plaintiffs' attorneys in its unwarranted screed about pre-filing investigation, where Metalcraft speculates recklessly about the plaintiffs' attorneys' motives, *see* Appellant's Brief, p. 48 (claiming the attorneys were "seeking to run up legal fees"),[9] even as Metalcraft decries "speculation and guesswork." Appellant's Brief, p. 47. Metalcraft's decision on appeal to take it for granted that Metalcraft – the *defeated* party in the Rule 11 motion practice below – has somehow conclusively established its counterparts' evil and malign motives even though the federal district court did not think so is itself factually baseless and legally unsound. The district court's Rule 11 motion practice decision and the foregoing analysis prove that nothing frivolous occurred in the federal district court in this case. However, even *if* something frivolous had somehow occurred, Metalcraft's hyperbolic argument about pre-filing inquiry would be utterly meritless: Even objectively *frivolous* filings do not compel an inference of unreasonable investigation. Mars Steel Corp. v. Cont'l Bank, 880 F.2d 928, 933 (7th Cir. 1989); *Brunt v. Service Employees Intern. Union*, 284

---

[9] Metalcraft's libel against the plaintiffs and their attorneys becomes a libel against the federal district court itself in the course of Metalcraft's overheated ranting:

> V.    THE DISTRICT COURT ABUSED ITS DISCRETION BY IGNORING THAT PLAINTIFFS' LAWSUITS WERE FILED AND PROSECUTED FOR THE UNLAWFUL PURPOSE OF UNREASONABLY AND UNNECESSARILY INCREASING THE COST OF LITIGATION IN VIOLATION OF RULE 11.

Appellant's Brief, p. 50; *see also* Appellant's Brief, p. 52 ("In these egregious cases, the district court ignored the accountability of lawyers like Hawks Quindel that violate Rule 11.").

F.3d 715, 721 (7th Cir. 2002). Again, Metalcraft's shameful overstatements in these arguments deserve nothing more than disapproving scorn.

## Conclusion

For the foregoing reasons, the district court's decision denying the Rule 11 sanctions motions should be affirmed.

Dated this 8th day of August, 2022.

s/ *Larry A. Johnson*

Larry A. Johnson
State Bar No. 1056619
Summer Murshid
State Bar No. 1075404
Timothy Maynard
State Bar No. 1080953
Attorneys for Plaintiffs
HAWKS QUINDEL, S.C.
222 East Erie, Suite 210
P.O. Box 442
Milwaukee, WI 53201-0442
Telephone: 414.271-8650
Fax: 414.271-8650
Email:  ljohnson@hq-law.com
        smurshid@hq-law.com
        tmaynard@hq-law.com

s/ *Michael R. Vescio*

Michael R. Vescio
State Bar No. 1024961
Counsel for Attorneys Larry A. Johnson, Summer Murshid, and Timothy Maynard, and for Hawks Quindel, S.C.
SMITHAMUNDSEN LLC
330 East Kilbourn Avenue
Suite 1100, Tower 1
Milwaukee, WI 53202-3170
Telephone:  414.847-6152
Fax:  414.847-6153
Email: mvescio@salawus.com

**Certificate of Word Count**

I hereby certify that this brief complies with the type-volume limitation of Circuit Rule 32(c) insofar as it contains fewer than 8,446 words, excluding the parts of the brief exempted by Appellate Rule 32(f).

*/s/ Michael R. Vescio*
Michael R. Vescio
Attorney at Law

**Certificate of Service**

I hereby certify that on the 8th day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-registered counsel by operation of the Court's electronic system.

*/s/ Michael R. Vescio*
Michael R. Vescio
Attorney at Law