Nos. 22-1743, 22-1744, 22-1745, 22-1746, 22-1747, 22-1748, 22-1749, 22-1750, 22-1751, 22-1752, 22-1753, 22-1754, 22-1755, 22-1756, 22-1757, 22-1758

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

RICHARD MAZUREK, et al.,

      Plaintiffs-Appellees,

v.

METALCRAFT OF MAYVILLE, INC.,

      Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case Nos. 17-cv-1439, 20-cv-0435, 20-cv-0436, 20-cv-0438, 20-cv-0439,
20-cv-0440, 20-cv-0441, 20-cv-0443, 20-cv-0447, 20-cv-0448, 20-cv-0449,
20-cv-0451, 20-cv-0452, 20-cv-0454, 20-cv-0455, 20-cv-0490
The Honorable Judge Brett H. Ludwig

REPLY BRIEF OF DEFENDANT-APPELLANT,
METALCRAFT OF MAYVILLE, INC.

THOMAS P. KRUKOWSKI S.C.
*Counsel of Record*
*Attorneys for Defendant-Appellant*
Thomas P. Krukowski, SBN 1013222
116 Legend Way
Wales, WI 53183
Telephone: (414) 881-4210
Email: tkrukowski@tpklegal.com

KOPKA PINKUS DOLIN PC
*Counsel of Record*
*Attorneys for Defendant-Appellant*
Ronald S. Stadler, SBN 1017450
Jonathan E. Sacks, SBN 1103204
N19W24200 Riverwood Dr., Suite 140
Waukesha, WI 53188
Telephone: (847) 549-9611
Email:  rsstadler@kopkalaw.com
       jesacks@kopkalaw.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF REPLY BRIEF ................................................................................. 1

ARGUMENT ............................................................................................................... 3

I.    THE DISTRICT COURT'S ERRONEOUS VIEWS OF THE LAW AND FACTS, AND ITS CRYPTIC STATEMENTS ILLUSTRATE AN ABUSE OF DISCRETION AND THE LACK OF A BASIS FOR DEFERENCE. ............... 3

II.    HAWKS QUINDEL'S ARGUMENTS REGARDING THE DISTRICT COURT'S SUMMARY JUDGMENT ARE DECEPTIVE AND CONTRADICTORY. ................................................................................. 6

III.    PLAINTIFFS ARGUING LAW OF THE CASE AND ISSUE PRECLUSION DO NOT APPLY IS INCORRECT. ................................................................. 6

IV.    HAWKS QUINDEL, OBJECTING TO ADVISING THIS COURT THEY DID NOT PERFORM A RULE 11 PRE-FILING INVESTIGATION AND ARGUING METALCRAFT LIBELED HAWKS QUINDEL, IS DISINGENUOUS. ......... 7

V.    HAWKS QUINDEL'S RAISED ISSUE THAT WEBSTER AND SIAS ARE NOT PART OF METALCRAFT'S 14 PLAINTIFFS' EXTENSIVE TRANSCRIPTS IS MEANINGLESS. ............................................................ 7

VI.    HAWKS QUINDEL'S ARGUMENT THAT THEY HAD AMPLE EVIDENCE IS INACCURATE AND UNFOUNDED (APPELLEES' BR. AT 4, 18-20). ..... 8

VII.    HAWKS QUINDEL'S ARGUMENT IT ESCAPED SANCTIONS IN 12 OF THE 16 CASES BY DROPPING THE CASES AFTER THE SUMMARY JUDGMENTS IS UNFOUNDED. .............................................................. 9

VIII.    HAWKS QUINDEL'S LEGAL STANDARD FOR RULE 11 IS FLAWED. ..... 9

CONCLUSION ......................................................................................................... 11

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 23(c) ............................................................................................................ 13

PROOF OF SERVICE ................................................................................. 14

CIRCUIT RULE 31(e)(1) CERTIFICATION ........................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Amcast Indus. Corp. v. Detrex,*
45 F.3d 155 (7th Cir. 1995) ........................................................................... 6

*Blackwell v. Cole Taylor Bank,*
152 F.3d 666 (7th Cir. 1998) ......................................................................... 1

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ................................................................................ 4, 11

*Denton v. Hernandez,*
504 U.S. 25 (1992) ....................................................................................... 10

*Divane v. Krull Elec. Co.,*
319 F.3d 307 (7th Cir. 2003) ....................................................................... 12

*Dries & Krump Mfg. Co. v. Int'l Assn. of Machinists & Aero Workers,*
802 F.2d 247 (7th Cir. 1986) ................................................................ 1, 5, 6

*Harter v. Iowa Grain Co.,*
202 F.3d 273 (7th Cir. 1998) .................................................................. 9, 10

*Keri v. Board of Purdue University,*
458 F.3d 620 (7th Cir. 2006) ......................................................................... 1

*Mars Steel Corp. v. Continental Bank N.A.,*
880 F.2d 928 (7th Cir. 1989) ......................................................................... 4

*Northern Ill. Telecom, Inc. v. PNC Bank N.A.,*
850 F.3d 880 (7th Cir. 2017) ......................................................................... 9

*Prochotsky v. Baker & McKenzie,*
966 F.2d 333 (7th Cir. 1992) ..................................................................... 6, 7

*Szabo Food Service, Inc. v. Canteen Corp.,*
823 F.2d 1073 (7th Cir. 1987) ................................................................ 8, 11

**Statutes and Regulations**

28 U.S.C. § 1915(d) .................................................................................................. 10

29 C.F.R. § 785.48(a) ................................................................................................. 6

Fed. R. Civ. P. 11 ................................................................... 1, 5, 6, 7, 9, 10, 11, 12

Fed. R. Civ. P. 11(b)(1) .............................................................................................. 5

Fed. R. Civ. P. 56 .................................................................................................. 6, 7

**Other Sources**

Schwarzer, William W.*, COMMENTARIES: RULE 11 REVISED*,
28 Loy. L.A. Rev. 7 (1994) ................................................................................ 10, 11

Schwarzer, William W., *COMMENTARIES: RULE 11 REVISITED*,
101 Harv. L. Rev. (1988) ......................................................................................... 10

*Webster's Dictionary* (4th ed. 1998) ........................................................................ 10

## SUMMARY OF REPLY BRIEF

> Judge Posner wrote, "[I]t [is] imperative that federal courts impose sanctions … The rules … designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt … Lawyers practicing in the Seventh Circuit, take heed!" *Dries & Krump Mfg. Co. v. Int'l Assn. of Machinists & Aero Workers*, 802 F.2d 247, 255-56 (7th Cir. 1986).

Plaintiffs and Hawks Quindel S.C. ("Hawks Quindel") signed and filed not just one, but 16 individual lawsuits without evidence, violating Fed. R. Civ. P. 11, not heeding the advice of Judge Posner. Likewise, Hawks Quindel ignored Metalcraft's argument that the absurdity of these lawsuits was illustrated in the deposition testimony of Richard Mazurek, the lead Plaintiff.[1] His attorney asked him why he used "the term speculation and conjecture, guesswork[,]" and he testified that he had *no* proof of his claim. Trying to rehabilitate Mazurek, his lawyer asked:

> Q  And when you say you have no proof, are you talking about you don't have any written proof?
> A  Written, verbal, any kind of pictures, nothing.

(17-1439, ECF No. 92-1 at 119:12-21; *also see* Appellant's Br. at 18-20.) Mazurek's factless lawsuit was signed and filed three months after his deposition (17-1439, ECF No. 112 at 18-20), making it impossible to certify that the complaint was "well-

---

[1] The general rule in this Circuit is that a party's failure to respond to an opposing party's argument implies concession. *See* e.g., *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643 n.7 (7th Cir. 2006) and *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 673 (7th Cir. 1998). "…silence about facts does constitute a waiver of the specific factual contentions made by opposing party in a brief filed earlier. *Hardy v. City Optical, Inc.*, *supra*, 39 F.3d at 771."

grounded in fact" because there was *no* proof of uncompensated work. The record is devoid of any evidence the Fair Labor Standards Act ("FLSA") was violated in all 16 lawsuits. Initially, the district court verified and endorsed this conclusion, deciding, "[i]n short, none of the four plaintiffs in this case has produced evidence to support their claims…" (17-1439, ECF No. 109 at 11; A-Appx. 13[2].) All additional 12 cases follow the same fate.

However, flying in the face of finding no evidence, Hawks Quindel argued for deference for the inconsistent denial of sanctions. Inconsistent because you cannot have it both ways; first deciding there clearly is *no* admissible evidence, then later conjuring up that there *might* be "a handful of facts." (A-Appx. 21.) The judgment involving *no* evidence was *not* appealed and became final on December 16, 2021 and is binding here. The district court's findings and conclusions clearly established there was no evidence to support the claims and the need to impose sanctions:

- "…Plaintiffs can muster only unreliable speculation and guesswork[.]" (17-1439, ECF No. 109 at 1; A-Appx. 3.)

- "He also could not remember an instance where he worked overtime and was not properly compensated, and he stated that nothing could trigger his memory." (*Id.* at 3; A-Appx. 5.)

- "None of the plaintiffs in the four instant cases has come forward with admissible evidence … [t]o the contrary, all four plaintiffs admit they have no concrete proof beyond their own guesswork and speculation." (*Id.* at 5; A-Appx. 7-8.)

- "Plaintiffs Are Unable to Satisfy Even the Limited Burden…" (*Id.* at 6; A-Appx. 8.)

---

[2] "A-Appx." references documents contained in the appendix attached to Metalcraft's initial brief.

2

- "This is a lenient standard. It recognizes the employee's inherent epistemic disadvantages, but it is not an open invitation to guess or invent working hours post hoc." (*Id.* at 7; A-Appx. 9.)

- "All four plaintiffs admit that their reconstructed worktime represents guesswork." (*Id.* at 9; A-Appx. 11.)

- "With no access to memories and no prospect of recovering them, Plaintiffs can offer nothing more than 'bare allegations.'" (*Id.* at 9; A-Appx. 11.)

- "In short, none of the four plaintiffs in this case has produced evidence to support their claims…" (*Id.* at 11; A-Appx. 13.)

Denying sanctions because Plaintiffs "did not misrepresent the law, mislead the Court, or defend at summary judgment without any facts" (*Id.* at 21) is unfounded and unjustified. Why was the summary judgment granted? Where is there *any* evidence? What about the failure to do pre-litigation investigations? What about the inability to certify the complaints had evidentiary support? Also, in the same breath, the district court again concluded, "…the proof Plaintiffs were able to marshal was inadequate…" (*Id.* at 21.) Doesn't *no* evidence mean *no* evidence and *no* proof? The district court was misled, and the law was misrepresented. Lastly, Plaintiffs concede the district court decided there was "zero pro-plaintiff evidence and zero pro-plaintiff inferences." (Appellee Br. at 10.) We agree! Plaintiffs' abuse of the litigation process created a "private playpen" for its litigation and is, therefore, sanctionable.

## ARGUMENT

I. **THE DISTRICT COURT'S ERRONEOUS VIEWS OF THE LAW AND FACTS, AND ITS CRYPTIC STATEMENTS ILLUSTRATE AN ABUSE OF DISCRETION AND THE LACK OF A BASIS FOR DEFERENCE.**

3

Deference, as argued by Plaintiffs, is missing because the district court abused its discretion when "it based its ruling on the erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). (*See* Appellant's Br. at 15-35.) This Court explains when deference is not owed to the district court:

> District courts must make findings and exercise discretion against a background of legal rules. If they err in appreciating or applying legal rules, their mistakes will be undone. …
>
> Deferential review will not prevent this court from ensuring that district judges reflect seriously, and consider fully, before imposing (or denying) sanctions. Until discretion has been taken seriously in the district court and exercised conscientiously, the basis for deference is missing.

*Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir. 1989) (en banc) (citations omitted).

The district court stated, "Plaintiffs have already lost, sanctions would be overkill" (17-1439, ECF No. 119 at 4; A-Appx. 21), and motions for sanctions were "petty bickering of legal counsel." (*Id.* at 1; A-Appx. 18.) These cryptic statements were the antithesis of requiring a serious and conscientious exercise of discretion. There is nothing "petty" or "bickering" about reminding the district court of its numerous findings and conclusions that Hawks Quindel could "muster only unreliable speculation and guesswork" (Appellant's Br. at 6; 17-1439, ECF No. 109 at 1; A-Appx. 3;), Hawks Quindel's lack of any admissible evidence to prove their FLSA lawsuits (*Id.* at 8; A-Appx. 7-8), or Hawks Quindel's lack of pre-filing investigations (*Id.* at 44-48), Hawks Quindel's soliciting employees like Lamberg who sued because he received a letter telling him "Metalcraft took $2,000 from him" (Appellant's Br. at

4

21; 20-0452, ECF No. 36-1 at 107:16-108:2) and a lawsuit which resulted in his perjury because of his contradictory sworn statements (Appellant's Br. at 22-23), Hawks Quindel's soliciting, signing and filing factless lawsuits previously knowing there was no proof of a FLSA violation (*Id.* at 18-32), and Hawks Quindel's unnecessary increase of litigation costs (*Id.* at 54-57). Details, yes, but not "petty bickering."

The district court's comment about "overkill" was misplaced. The only "overkill" was Hawks Quindel's abusive litigation tactics that proved *no* evidence of a FLSA violation and unnecessarily increased the cost of litigation in violation of Fed. R. Civ. P. 11(b)(1). Plaintiffs' "overkill" levied costs against Metalcraft for the 74 excessive number of depositions, $26,304.65 in transcript costs, 253 excessive interrogatories and 123,055 documents requested. Isn't it "overkill" that Metalcraft had to bear these costs? (*See* Appellant Br. at 13, 51-52.) Hawks Quindel ignores and does not deny these tactics and levied costs. They are deemed conceded. (*See infra* n.1.) Metalcraft defending itself for years, incurring unnecessary litigation costs was not petty or trivial.

> Judge Posner's admonition and prognosis for enforcing Rule 11 provides:
>
> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have *made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts*. The rules, whether statutory or judge-made, designed to discourage groundless litigation *are being and will continue to be enforced in this circuit to the hilt … Lawyers practicing in the Seventh Circuit, take heed!*

*Dries*, 802 F.2d at 255-56 (emphasis added; citations omitted). Denial of sanctions was not enforcing Rule 11 to the "hilt" for the misuse of groundless litigation.

## II. HAWKS QUINDEL'S ARGUMENTS REGARDING THE DISTRICT COURT'S SUMMARY JUDGMENT ARE DECEPTIVE AND CONTRADICTORY.

Plaintiffs deceptively characterize all issues underlying the summary judgments with a broad brush, only arguing losing the summary judgment was irrelevant. The district court decisively decided there was no admissible evidence, no routine, records are immaterial under 29 C.F.R. § 785.48(a), the Portal-to-Portal Act and de minimis doctrine apply. These decided issues were settled in the Fed. R. Civ. P. 56 motions and they are relevant in determining sanctions in the same cases.

Plaintiffs concede that the court decided that there was "zero pro-plaintiff evidence and zero pro-plaintiff inferences" (Appellee's Br. at 10) in arguing why summary judgment is immaterial. However, this admits the issue of "no evidence" was litigated, and that is exactly why all 16 cases are without evidence under Rule 56 and no evidence under Rule 11 for Hawks Quindel to certify the lawsuits were "well-grounded in fact."

## III. PLAINTIFFS ARGUING LAW OF THE CASE AND ISSUE PRECLUSION DO NOT APPLY IS INCORRECT.

Here, we rely on our Brief in Chief to support our position on law of the case and issue preclusion. (Appellant's Br. at 34-44.) Plaintiffs ignore the cases and the treatises cited in Metalcraft's brief, specifically *Amcast Indus. Corp. v. Detrex*, 45 F.3d 155 (7th Cir. 1995), supporting reversal of the district court's denial of sanctions. (*See* Appellant's Br. at 34-44.) Plaintiffs incorrectly cite *Prochotsky v. Baker & McKenzie*,

6

966 F.3d [sic] 2d 333 (7th Cir. 1992). (Appellees' Br. at 4, 9, 11, 13, 14 and 16.) This decision actually supports Metalcraft. Two distinct statutes shared "a single core of operative facts form[ed] the basis of both lawsuits" and *res judicata* applied. As here, Rules 56 and 11 share the identical single core operative facts, e.g. no evidence, and supports a finding of baselessness in both motions.

IV. **HAWKS QUINDEL, OBJECTING TO ADVISING THIS COURT THEY DID NOT PERFORM A RULE 11 PRE-FILING INVESTIGATION AND ARGUING METALCRAFT LIBELED HAWKS QUINDEL, IS DISINGENUOUS.**

The truth is, Hawks Quindel did *not* do a pre-filing investigation and they have *not* cited *any* evidence they did. They ignored Metalcraft's evidence of no pre-filing investigations – (1) none of the 16 cases had admissible evidence; (2) the pre-filing deposition testimony of Mazurek and Anders; and (3) the nine dismissed cases, including Kornowski, who only worked for Metalcraft for two weeks, neither of which came close to 40 hours. (Appellant's Br. at 3, 44-48.) There is only one conclusion: Hawks Quindel did not do a pre-filing investigation, and "if the shoe fits, wear **it."**

V. **HAWKS QUINDEL'S RAISED ISSUE THAT WEBSTER AND SIAS ARE NOT PART OF METALCRAFT'S 14 PLAINTIFFS' EXTENSIVE TRANSCRIPTS IS MEANINGLESS.**

Clearly, the district court's findings and conclusions regarding Webster and Sias are referred to in Metalcraft's brief. For example, as to Webster, "[h]e also testified that he did not have a memory as to what he did…" (Appellant's Br. at 7), no "triggering factors or events…" (*Id.*), "…no memory of that routine…" (*Id.* at 8). As to Sias, he "did not know if the pre-shift work for which he received overtime pay…" (*Id.* at 8), his "routine was not based on his memory" (*Id.*), "nothing could trigger his

7

memory" (*Id.*). Likewise, the district court held that none of the four Plaintiffs, which includes Webster and Sias, produced admissible evidence. As illuminating is Hawks Quindel ignoring, failing to dispute, and conceding the lack of evidence of all of the other 12 Plaintiffs. (Appellant's Br. at 15-31; *also see infra* n.1.) The lack of evidence of all 16 Plaintiffs is well documented in Metalcraft's brief.

## VI. HAWKS QUINDEL'S ARGUMENT THAT THEY HAD AMPLE EVIDENCE IS INACCURATE AND UNFOUNDED (APPELLEES' BR. AT 4, 18-20).

Only four of the 16 Plaintiffs – Webster, Sias, Mazurek and Lamberg – argued they provided evidence of their claims. (Appellees' Br. at 17-20.) Where is it? The scant speculations of these four Plaintiffs were fully reviewed by the district court who decided "Plaintiffs can muster only unreliable speculation and guesswork, which are insufficient, as a matter of law, to prove damages." (17-1439, ECF No. 109; Appellant's Br. at 6; A-Appx. 3.) If Plaintiffs had *any* evidence, the summary judgment, which they did not appeal, would not have been granted.

Inconsistent to Plaintiffs' argument that they had ample evidence, is their admission the district court did not cite any evidence in the denial of sanctions, and the district court did not have any obligation to do so, citing *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir. 1987). (Appellees' Br. at 21-22.) This is not the law. *Szabo* remanded the case because the lower court did not give a complete explanation of its decision and "Canteen and this court are entitled to explanations." *Id.* at 1084. It was obvious why Plaintiffs argue the district court did not and had no obligation to cite any evidence – there is no evidence.

8

Arguing the district court did not and was not obligated to cite any evidence for the denial of sanctions, Plaintiffs subsequently contradict themselves by straining to rely on the district court's feeble comment that "there are a handful of facts that might support an FLSA action." (Appellees' Br. at 15-16.)

**VII. HAWKS QUINDEL'S ARGUMENT IT ESCAPED SANCTIONS IN 12 OF THE 16 CASES BY DROPPING THE CASES AFTER THE SUMMARY JUDGMENTS IS UNFOUNDED.**

Hawks Quindel's withdrawal of the 12 lawsuits on January 18, 2022 was too late and did not occur "shortly after the pre-trial proceedings" as argued, but actually over six months after discovery ended, after the summary judgments, 21 months after the lawsuits were filed, after 74 excessive depositions, after 253 excessive interrogatories, after 123,055 pages of documents produced, and after $26,304.65 in transcript costs. Also, the withdrawal of 12 lawsuits was approximately 19 months after the Rule 11 "Safe Harbor" letters of May 2020 which stated the lawsuits were "based on speculation, guessing and mere conjecture." (*See* Appellant's Br. at 4-5.) Further, during the entire 21 months, there was *no* evidence in all 16 cases and the summary judgments merely confirm this, and Hawks Quindel knew or should have known that.

**VIII. HAWKS QUINDEL'S LEGAL STANDARD FOR RULE 11 IS FLAWED.**

The denial of sanctions returns the law of sanctions prior to 1937,[3] and turns a blind eye to today's purpose of Rule 11. This Court, in *Harter v. Iowa Grain Co.*, provides the law in this Circuit:

---

[3] Rule 11 was first adopted in 1938. *Northern Ill. Telecom, Inc. v. PNC Bank N.A.*, 850 F.3d 880, 885 (7th Cir. 2017).

9

> One of the basic purposes of Rule 11 … is to 'deter baseless filings in the district court.'" *Fries v. Helsper*, 146 F.3d 452, 458, 1998 WL 276172, *5 (7th Cir. 1998) (quoting *Cooter & Gell,* 496 U.S. at 393).

202 F.3d 273 (7th Cir. 1998). Plaintiffs, however, cite *Denton v. Hernandez,* 504 U.S. 25 (1992) (Appellees' Br. at 12, 14, 17), a case involving 28 U.S.C. § 1915(d) and a prisoner's pro se status for an informa pauperis complaint, and not issues under Rule 11. Baseless is defined as "having no basis in fact; unfounded." *Baseless*, *Webster's Dictionary* (4th ed. 1998). Groundless means "without reason or cause, unjustified." *Groundless, Webster's Dictionary* (4th ed. 1998). Without evidence, Plaintiffs' lawsuits are baseless and groundless.

In his article *COMMENTARIES: RULE 11 REVISITED*, 101 Harv. L. Rev. *1013 (1988), Judge William W. Schwarzer, discussing revisions of Rule 11, stated:

> When [the need for sanctions arises] courts must not hesitate to enforce Rule 11 …. [I]f judges turn from Rule 11 and let it fall into disuse, the message to those inclined to abuse or misuse the litigation process will be clear. Misconduct, once tolerated, will breed more misconduct.

Then, in a subsequent article, *COMMENTARIES: RULE 11 REVISED*, Judge Schwarzer further discusses the 1983 revisions, providing:

> The Note began by stating that "the new language is intended to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions." That language obligated attorneys to conduct "some prefiling inquiry into both the facts and the law [that was to be] reasonable [ ] under the circumstances [and under a standard] more stringent than the original good-faith formula." …
>
> As Professor Miller, then the Advisory Committee's reporter, put it, "Once it is understood that the court system is a societal resource, not merely the private playpen of the litigants, the difficult task of discouraging hyperactivity must be undertaken. … Other commentators

10

> described the purpose to "create a higher standard of attorney behavior," and "elevate the standards of practice." …
>
> There seems to be wide agreement that Rule 11 accomplished the principal objective of its drafters: to lead litigants "to stop, think and investigate more carefully before serving and filing papers."

28 Loy. L.A. L. Rev. 7, *9-11 (1994). Judge Schwarzer, discussing the 1993 revisions:

> The 1993 amendments retain the general framework of the 1983 version which is founded upon attorney certification of compliance with Rule 11's standards.

*Id.* at *12-13. Discussing the 1993 revisions and sanctions, Judge Schwarzer provides:

> In fact, are not the reasonable costs inflicted by a Rule 11 violation the most objective criterion for the appropriate sanction, and their assessment the most effective deterrent, considering that a party about to embark on conduct that may result in a violation will be able to estimate the likely cost of its conduct?

*Id.* at *22-23. In a conclusionary comment, Judge Schwarzer states:

> As Judge Easterbrook has pointed out, sanctions may be needed as much "for the protection of the judicial process as … to relieve the financial burden that baseless litigation imposes on the other side."

*Id.* at *32 (citing *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987). The Court in *Szabo* also provides, "[i]f [a litigant] … imposed costs on its adversary and the judicial system for violating Rule 11 it must expect to pay." *Id.* at 1079.

## **CONCLUSION**

Here, not just one, but 16 baseless and groundless lawsuits are sanctionable, and Rule 11 should be enforced to the "hilt." Denial of sanctions tolerates baseless litigation and ignores that litigants should "stop, think and investigate more carefully before serving and filing papers." *Cooter*, 496 U.S. at 398. This Court should reverse

11

the district court's denial of sanctions and provide instructions for attorney fees here in light of all 16 individual lawsuits lacking evidence and the district court's cryptic statements which, if repeated, could result in another appeal for an abuse of discretion regarding the remedies for these Rule 11 violations for "serving a dual purpose of deterrence and restitution." *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003).

Dated this 25th day of August, 2022.

> THOMAS P. KRUKOWSKI S.C.
> Attorneys for Defendant-Appellant
>
> By: /s/ Thomas P. Krukowski
> Thomas P. Krukowski, SBN 1013222
> 116 Legend Way
> Wales, WI 53183
> Telephone: (414) 881-4210
> Email: tkrukowski@tpklegal.com
>
> KOPKA PINKUS DOLIN PC
> Ronald S. Stadler, SBN 1017450
> Jonathan E. Sacks, SBN 1103204
> N19W24200 Riverwood Dr., Suite 140
> Waukesha, WI 53188
> Telephone: (847) 549-9611
> Email:  rsstadler@kopkalaw.com
>          jesacks@kopkalaw.com

# **CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)**

The undersigned, counsel of record for the Defendant-Appellant, Metalcraft of Mayville, Inc., furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 3,197 words.

Dated: August 25, 2022

                                                    THOMAS P. KRUKOWSKI S.C.

                                                    /s/ Thomas P. Krukowski
                                                    Thomas P. Krukowski
                                                    Attorney for the Defendant-Appellant,
                                                    Metalcraft of Mayville, Inc.

116 Legend Way
Wales, WI 53183
(262) 201-4483

## **PROOF OF SERVICE**

The undersigned, counsel for the Defendant-Appellant, Metalcraft of Mayville, Inc., hereby certifies that the Reply Brief was filed in the Office of the Clerk for the United States Court of Appeals for the Seventh Circuit, in electronic form on August 25, 2022, and also by delivering same to the Clerk of the Seventh Circuit Court of Appeals, 219 Dearborn Street, Chicago, IL 60604. I further certify that counsel for all parties are participants in this Court's electronic filing system and that paper copies of the brief and appendix have been served on counsel for Plaintiffs, Larry Johnson, Summer Murshid and Timothy Maynard, Hawks Quindel S.C., 5150 N. Port Washington Road, Suite 243, Milwaukee, WI 53217, and Michael Vescio, SmithAmundsen LLC, 330 E. Kilbourn Avenue, Tower 1, Suite 1100, Milwaukee, WI 53202 by 5:00 p.m. on August 25, 2022.

Dated: August 25, 2022

                                                  THOMAS P. KRUKOWSKI S.C.

                                                  /s/ Thomas P. Krukowski
                                                  Thomas P. Krukowski
                                                  Attorney for the Defendant-Appellant,
                                                  Metalcraft of Mayville, Inc.

116 Legend Way
Wales, WI 53183
(262) 201-4483

## **CIRCUIT RULE 31(e)(1) CERTIFICATION**

The undersigned counsel certifies that the full contents of the Reply Brief has been electronically filed on August 25, 2022.

Dated: August 25, 2022

THOMAS P. KRUKOWSKI S.C.

 /s/ Thomas P. Krukowski
Thomas P. Krukowski
Attorney for the Defendant-Appellant,
Metalcraft of Mayville, Inc.

116 Legend Way
Wales, WI 53183
(262) 201-4483